IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| DALE MICHAEL, | : | CIVIL ACTION |
| **Plaintiff** | : | |
| | : | |
| v. | : | NO. 07-100 |
| | : | |
| ELBA McINTOSH, et al., | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

STENGEL, J.                                                                July 31, 2008

Plaintiffs seeks specific performance, damages and restitution to compensate him for the alleged fraudulent actions by defendants which deprived him of certain properties and rents he believes to be rightfully his by inheritance upon the death of Elizabeth T. Michael (deceased February 15, 1995, mother of both plaintiff and defendants).  Plaintiff originally disclaimed his interest in these properties when Elizabeth T. Michael executed inter vivos transfers of remainder interests to her children, retaining a life estate.  Plaintiff claims that an oral agreement between all parties and Elizabeth T. Michael requires co-defendants to reconvey these properties to plaintiff.  Based on review of the papers, and oral argument presented by the parties, I will grant the motion for summary judgment.

I.      BACKGROUND[1]

In 1982, Elizabeth T. Michael decided to distribute real property she owned by

---

[1] I have viewed the facts in the light most favorable to the plaintiff, as the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

1

carving out a life estate for herself, including all rental income flowing from the

properties (primarily located in St. Thomas, U.S. Virgin Islands), with remainder in fee

simple absolute to her three children, plaintiff and defendants.  Elizabeth T. Michael

forwarded a final distribution plan ("Final Distribution"), with the input of the children, to

the law firm of Pallme & Mitchell in June 1983, where lawyers prepared the necessary

documents for all conveyances dictated in the Final Distribution.  Elizabeth T. Michael

executed the documents and the law firm recorded them.

 The Final Distribution did not evenly distribute the properties, but conveyed

significantly more to defendants than to plaintiff.  Plaintiff claims he agreed to this

division because defendants were single parents and plaintiff had no children, and

because he had promised his father not to contest conveyance of the property located at

#4 Estate Frydenhoj to defendants.  Plaintiff submits that "it was always clear that both

parents expected all three of their children to share in the properties they had acquired

during their lifetime."[2]

 In 1984, plaintiff and defendants together obtained a permit to construct a private

dock on Parcel #6 Estate Frydenhoj, and plaintiff provided the funds to construct the

---

 [2]Plaintiff refers to Exhibit 5 to the Complaint as evidence in support of this contention.
On plaintiff's Exhibit List, that document is described as: "Letter dated June 28, 1977 from Cyril
Michael asking permission to convey Parcel 4 Estate Frydenhoj to defendants McIntosh and
Goodwill."  He quotes the letter in his Complaint as stating: "As you know, there are other places
which are located both in town and country which would be available if you wish to use in St.
Thomas."  To the extent plaintiff is claiming this language would create a one-third life estate in
these properties, this claim is legally preposterous under the law of any state.

dock.  Each party owned a one-third remainder interest in parcel #6 Estate Frydenhoj per the Final Distribution conveyances.  Plaintiff then purchased two parcels (#7 and #21) adjacent to #6 Estate Frydenhoj, conveyed a one-third interest in each to defendants, and in 1986 expanded the dock to cover all three waterfront properties.  Goodwill and McIntosh did not contribute to the cost of any of the above, though all three parties shared in the rental income from the dock until it was destroyed by Hurricane Marilyn in 1995.

In 1988, plaintiff informed his mother and defendants that a divorce was imminent. Out of concern that his divorce would cloud the title on some of the family properties (hereinafter, "trust properties") because of plaintiff's remainder interest,[3] plaintiff reconveyed to Elizabeth T. Michael his remainder interests in the "Pollyberg" and 20 Bjerge Gade properties.  (See Compl., Ex. 9(a) to 9(f).)  He also conveyed his one-third remainder interest and fee simple interests in the Frydenhoj Parcels to Goodwill and McIntosh equally.  (See id., Ex. 10(a) and 10(b).)  Elizabeth T. Michael then conveyed plaintiff's remainder interests in the Pollyberg and 20 Bjerge Gade properties equally to McIntosh and Goodwill, retaining her own life estate in each property.  All conveyances were made by quitclaim deed and in fee simple absolute.  (See Defs.' Br., Ex. B(I)-(v), C(i)-(ii).)

_____

[3]Plaintiff lists all properties in which he held a remainder in his Complaint.  (See Compl. ¶14.)  I note the discrepancy in the record concerning how Mr. Michael "reconveyed" the trust properties.  Defendants' submissions reflect that Mr. Michael unequivocally disclaimed any interest passing to him by gift of Elizabeth Michael in 1988.  This would appear to be the case judging from Mr. Michael's own admissions in an unrelated action against him by the Virgin Islands Bureau of Internal Revenue.  (See Defs.' Br., Ex. A, 3.)

3

According to plaintiff, all parties understood that after the divorce the remainder interests would be reconveyed so that Elizabeth T. Michael's original Final Distribution would be reinstated.  Plaintiff also claims defendants had agreed to reconvey his one-third remainder and fee simple interests in the Frydenhoj parcels.  Plaintiff admits that the obligation to reconvey these interests is based entirely on an oral agreement between family members.

On July 16, 1988, Elizabeth T. Michael executed a Will expressing her wish that the property located at 19 Bjerge Gade be used by defendant Goodwill to set up a trust for Goodwill's children.  (See Compl., Ex. 12.)

The Complaint also describes a history of mutual conveyances and reconveyances between family members, usually commencing with plaintiff's initial purchase of a parcel, with either one or both defendants named as grantees making no financial contribution.  Defendants would then convey the parcel back to plaintiff, or to Elizabeth T. Michael.

In 1993, plaintiff's divorce action settled.  Elizabeth T. Michael was unexpectedly killed in an automobile accident on February 15, 1995.  Plaintiff alleges that defendants immediately began collecting rents from all properties in which they held remainder interests, including those that should have been returned to plaintiff subject to the oral agreement of 1988.  The value of all properties passing to or otherwise conveyed to defendants have increased immeasurably, particularly the properties purportedly subject

to the oral agreement of 1988.  (<u>See</u> Compl., Ex. 18.)  Plaintiff avers that he has, on

several occasions, attempted to hold defendants to their word, to no avail.  (<u>See</u> Compl.,

Ex. 19(a) to 19(f).)

## II.   PROCEDURAL HISTORY

On July 30, 2007, plaintiff filed the present action, alleging the following claims

for relief against defendants:

> (1)   Unjust enrichment
> (2)   Constructive trust
> (3)   Quasi-contract
> (4)   Restitution
> (5)   Specific performance
> (6)   Promissory estoppel
> (7)   Breach of fiduciary duty
> (8)   Fraud
> (9)   Civil conspiracy
> (10)  Resulting trust
> (11)  Testator's intent
> (12)  Punitive damages[4]

Though the subject properties are located in the U.S. Virgin Islands, jurisdiction is

predicated on diversity of citizenship, pursuant to 28 U.S.C. § 1332.[5]  In her Answer, Elba

McIntosh lodged a Counterclaim against plaintiff, alleging the following:

> (1)   Slander of title

---

[4]In his Opposition to defendants' summary judgment motion, plaintiff states only ten counts, omitting the final two claims for relief listed above.  (<u>See</u> Opp'n Br. 2.)

[5]Plaintiff alleges, upon information and belief, that McIntosh is a resident of California and Goodwill is a resident of Indiana.  Defendants do not dispute this characterization of their citizenship.  In his Answer to defendant McIntosh's Counterclaim, plaintiff avers that Goodwill is a resident of New York.

     (2)    Loss of Marketability
     (3)    Fraud and fraudulent misrepresentation
     (4)    Unjust enrichment
     (5)    Intentional infliction of emotional distress
     (6)    Punitive damages

Defendant McIntosh moved for summary judgment on the grounds that (1) plaintiff has admitted no interest in the Trust Properties in statements made in his Answer to Intervenor's Complaint and Memorandum in support thereof, file in Civ. A. No. 1992-229 in the U.S. District Court for the Virgin Islands, and (2) a Mediated Settlement Agreement dated May 19, 2005 settling another action, Civ. A. No. 2004-327, brought by plaintiff against McIntosh, resolves all issues of material fact pertaining to the present case (Document #51). Defendant Goodwill, proceeding *pro se*, joins in McIntosh's motions. Judge Gomez, by Order entered May 5, 2008, denied defendants' Motion to Dismiss plaintiff's Complaint on the grounds of (1) statute of limitations, (2) Statute of Frauds, and (3) unclean hands (Document #46). In his Opposition to defendants' Motion for Summary Judgment, plaintiff emphasizes that the crux of this action is the alleged oral agreement that the subject properties would be reconveyed to him after the settlement of his divorce matter.

## II.   Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255. The court must decide not whether the evidence unmistakably favors one side or the other, but whether a

fair-minded jury could return a verdict for the plaintiff on the evidence presented.  Id. at

252.  If the non-moving party has exceeded the mere scintilla of evidence threshold and

has offered a genuine issue of material fact, then the court cannot credit the movant's

version of events against the opponent, even if the quantity of the movant's evidence far

outweighs that of its opponent.  Big Apple BMW, Inc. v. BMW of North America, Inc.,

974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   DISCUSSION

In response to plaintiff's claim that a 1988 oral agreement requires the defendants

to reconvey the subject property interests to him, defendants assert two overarching

defenses:[6] (1) that plaintiff disclaimed all ownership in his admissions relating to a

previous action in which he was a defendant, and (2) that a mediated settlement

agreement resolves all the issues raised in plaintiff's complaint.  Defendants' best

argument, however, appears in their reply brief: "Plaintiff has not established a scintilla of

evidence–even taking into consideration the inferences in Plaintiff's favor–that an oral

agreement has ever existed."  (See Defs.' Reply 5.)

## A.      Existence of the 1988 Oral Agreement

Each count in plaintiff's Complaint depends on the existence of an oral promise by

_____

[6]Defendant Goodwill has not filed her own responsive pleading in this matter, rather, she
entered a "special appearance" to join her sister's motion to dismiss and motion for summary
judgment.  The Court granted this request.  Plaintiff filed a "Supplemental Opposition" after the
Court indulged further discovery to permit him to respond to Goodwill's possible defenses.  I
have not reproduced these arguments here, as I find them speculative, laborious and largely
irrelevant in light of the two overarching issues raised in McIntosh's initial motions.

his family members to reconvey certain property interests to him.  Plaintiff's most cogent

statement of the facts establishing an oral agreement regarding the "true owner" of the

subject properties appears in his Sur-Reply.  (See Pl.'s Sur-Reply 5.)  There he states that

defendant McIntosh (1) promised to send half of the income from the properties until she

recovered from financial difficulties, (2) sent quitclaim deeds conveying her fee simple

interests in the trust properties in exchange for plaintiff paying off a loan balance, and (3)

refrained from paying taxes on the trust properties for thirteen (13) years.  (See id.)  In his

first opposition, plaintiff cites various statements made in correspondence between the

three Michael siblings in support of his claims.  (See Opp'n Br., Pl.'s Mat. Facts, ¶¶9-

14.)[7]

      Plaintiff also points to a "memorandum," purportedly drafted by his mother after

the execution of her Will (at some time between 1992 and 1995, according to plaintiff).

This document contains no indication of Elizabeth Michael's intent to revoke her Will, or

any other indicia of testator's intent.  The memorandum allegedly expresses her wish that

the property interests be divided three ways.

      I find the above statements irrelevant to the question of whether, as of 1988, when

---

[7]The letters to which plaintiff refers are dated between 1996 and 1998, making them both a decade old and a decade *newer than* the alleged oral agreement.  (See Compl., Ex. 19(c), (d) and (k); Opp'n Br., Ex. I(a), (b).)  While the statute of limitations is not before me, the simultaneous remoteness and staleness of this evidence may certainly be considered in assessing its relevance and credibility.  Not one of these documents refers to an agreement of the kind Mr. Michael outlines in his Complaint.  At most, they reveal the mutual reconnoitering of three eager beneficiaries squabbling over the remains of their mother's estate.

the original conveyances were executed, or as of 1995, when Elizabeth T. Michael passed away, the parties had an oral agreement that certain property interests would be reconveyed to plaintiff under the terms specified in the Complaint.

Based on the lack of evidence of an oral agreement alone, I may grant defendants' motion.  Mr. Michael has failed to show that any oral promise to reconvey the subject properties ever passed between defendants and himself.[8]

B.    Plaintiff's Admission Disclaiming Interest

Defendants call the Court's attention to the papers filed by plaintiff, then-defendant, Dale Michael on July 28, 2003, in response to Intervenor's Complaint in the

---

[8]Defendant McIntosh raised both a statute of limitations and a Statute of Frauds defense in her 12(b)(6) motion (See Document #46, joined by defendant Goodwill).  At oral argument on the summary judgment motion, the parties discussed the Statute of Frauds issue raised under the facts of this case, and I find it appropriate to explore the question briefly here, considering defendant McIntosh has raised the Statute of Frauds as an affirmative defense in her Answer (Document #15).  Title 28 of the Virgin Islands Code enumerates the modern Statute of Frauds applicable to real property contracts:

§ 241.  Creation or transfer of interest in real property
(a)    Except for a lease for a term not exceeding one year, no estate or interest in real property, and no trust or power over or concerning real property, or in any manner relating thereto, can be created, granted, assigned, transferred, surrendered, or declared, otherwise than–
   1.    by operation of law; or
   2.    by a deed of conveyance or other instrument in writing, signed by the person creating, granting, assigning transferring, surrendering, or declaring the same, or by his lawful agent under written authority, and executed with such formalities as required by law.

28 V.I. Code § 241.

It is clear to this Court from the facts presented on summary judgment that the 1988 oral agreement described by Mr. Michael is within the Statute of Frauds and is therefore legally void and may not be specifically enforced.  See, e.g., Garcia v. Herbert, No. 02-76, 2006 U.S. Dist. LEXIS 90901, at *2 (D.V.I. Nov. 22, 2006) (considering, sua sponte, the application of the Statute of Frauds where oral agreement related to a real property interest (leasehold)).

District Court action brought by the Virgin Islands Bureau of Internal Revenue and joined by the Internal Revenue Service of the United States.  (See, e.g., Defs.' Br., Ex. A, Civ. A. No. 1992-229 (hereinafter "1992 action"), Memorandum of Law in Support of Motion to Dismiss (hereinafter "1992 Memorandum of Law").)  This action arose out of the failure of a business operated by Michael and the resultant tax liability for alleged unpaid withholding taxes.  (See id., at 1-3.)

Mr. Michael states in his 1992 Memorandum of Law *inter alia* that: (1) that he immediately disclaimed any interest in the subject properties upon learning of Elizabeth T. Michael's intention to distribute these properties through *inter vivos* transfers with a retained life estate in the transferor;[9] (2) that his disclaimer was an "irrevocable and unqualified refusal" to accept an interest in the property, particularly in light of the quitclaim deeds executed in response to the transfer, deeding over his one-third remainder interest the properties to his two sisters; and (3) that as a result defendants owned the subject properties in fee simple absolute (after the termination of their mother's life estate).  (See id. at 3.)

The admissions constitute very strong evidence that no oral agreement existed between plaintiff and defendants, evidence to which plaintiff has not adequately

---

[9]It is interesting to note too that Mr. Michael's 1992 Memorandum of Law contradicts his present position that he was involved in orchestrating the Final Disposition plan, when he contends that "Defendant [now plaintiff] did not participate or have any influence on the distribution.  In fact, defendant [now plaintiff] was *unaware* of Elizabeth Michael's intentions." (See 1992 Memorandum of Law, 3 (emphasis added).)

responded.  His less-than-genuine posturing before the Court with respect to the

ownership of these properties also gives pause.  In short, Mr. Michael relies heavily on

equitable doctrines such as quasi-contract and promissory estoppel in support of his right

to recovery.  Even if he had furnished evidence of an oral agreement, the facts strongly

suggest that the doctrine of unclean hands would prohibit recovery under many of his

claims.  For summary judgment purposes, I need not reach this question, however.

Plaintiff's claims cannot survive his own admission that he surrendered in absolute terms

any interest in the subject properties.

C.      Mediated Settlement Agreement

         Defendants also direct the Court to a Mediated Settlement Agreement, dated May

19, 2005, containing the following terms: (1) that defendant McIntosh would convey to

Plaintiff Parcel No. 20 Bjerge Gade, St. Thomas, Virgin Islands; (2) that Defendant

McIntosh would convey to Plaintiff Parcel Nos. 11 and 12 Estate Prindsens Gade, St.

Thomas, Virgin Islands; (3) that plaintiff would release any and all liens [Notices of

Interest] on all real property "owned in whole or in part" by Defendant McIntosh,

including 68, 69 and 70a Dronningens Gade, St. Thomas, Virgin Islands.  Plaintiff did

release the Notices of Interest on all properties pursuant to the Agreement.

         At a minimum, the binding Settlement Agreement resolved the ownership interest

in several of the subject properties.  At best though, this issue is subordinate to the two

larger questions presented: (1) whether an oral agreement existed, and (2) whether, to the

extent plaintiff has raised a genuine issue as to the existence of an oral agreement, the Court should permit the plaintiff to move forward on his claims for relief in light of the suspect nature of his real property transactional practices.  I answer both of these questions in the negative, and need not reach the question of how the Settlement Agreement impacts the parties' present dispute.

## IV.   CONCLUSION

The plaintiff has already admitted that he holds no ownership interest in these properties and he has no cognizable evidence of the 1988 oral agreement specified in the Complaint.  I will therefore grant summary judgment in favor of the defendants with respect to all counts of the Complaint.  An appropriate Order follows.

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| **DALE MICHAEL,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 07-100** |
| | : | |
| **ELBA McINTOSH, et al.,** | : | |
| **Defendants** | : | |

## O R D E R

**STENGEL, J.**

       **AND NOW**, this 31st day of July, 2008, upon consideration of defendants' Motion for Summary Judgment (Document #51), it is hereby **ORDERED** that the motion is **GRANTED** in its entirety.

BY THE COURT:

/s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.